FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

NOV 30 2009

JAMES N. HATTEN, CLERK
By:                    Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| FOREST PARK HOLDINGS, LLC | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. |
| vs. | § | **1 09-CV-3362** |
| | § | |
| HD SUPPLY PLUMBING/HVAC | § | TWT |
| GROUP, INC., | § | |
| | § | |
| Defendant. | | |

## COMPLAINT

Comes Now, Forest Park Holdings, LLC, ("Forest Park") Plaintiff in the above-styled civil action, and shows this honorable Court the following:

## THE PARTIES

1. Plaintiff Forest Park Holdings, LLC is a Washington limited liability company with its principal place of business at 46 Village Way 127, Port Ludlow, Washington 98365, and is duly authorized to conduct business in the State of Georgia.

2. Defendant HD Supply Plumbing/HVAC Group, Inc., ("HD Supply") is a Delaware corporation, with its principal place of business located at 3100 Cumberland Boulevard, Suite 1700, Atlanta, GA 30339.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332. Complete diversity exists between Forest Park, on the one hand, and HD Supply on the other hand. The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

4. This Court has personal jurisdiction over HD Supply.

5. HD Supply may be served with process through its registered agent Corporate Creations Network, located at 2985 Gordy Parkway, 1st Floor, Marietta, GA 30066.

6. Venue is proper in the Northern District of Georgia, the judicial district in which HD Supply resides, pursuant to 28 U.S.C. § 1391 (a) and (c).

## BACKGROUND

7. On or about July 1, 1985, Rodbell Forest Park Properties ("Rodbell"), a predecessor in interest to Plaintiff, and Apex Supply Company, Inc., ("Apex") a predecessor in interest to Defendant, entered into a lease ("Lease") for the property located at 312 Cash Memorial Highway, Forest Park, Georgia ("Property").

8. A true and correct copy of the Lease is attached hereto and incorporated by reference herein as Exhibit A.

9. The initial term of the Lease was July 1, 1985 through July 1, 1995.

10. On or about July 1, 1995, Rodbell and Apex signed an amendment to the Lease extending the term of the Lease until July 1, 2005 ("First Lease Extension").

11. A true and correct copy of the First Lease Extension is attached hereto and incorporated by reference herein as Exhibit B.

12. Upon information and belief, in or about February 2000, Home Depot, Inc., ("Home Depot") purchased the shares or assets of Apex.

13. Upon information and belief, Home Depot operated Apex has a wholly owned subsidiary.

14. Upon information and belief, on or about March 31, 2004, Rodbell sold the Property to Cash Memorial Partners, LLC ("Cash Memorial").

15. On or about April 26, 2005, Cash Memorial and Apex signed another amendment to the Lease extending the Lease term until June 30, 2010 ("Second Lease Extension").

16. A true and correct copy of the Second Lease Extension is attached hereto and incorporated by reference herein as Exhibit C.

17. Paragraph 4 of the Second Lease Extension gave Apex the right to terminate the Lease on June 30, 2008 if Apex provided notice of such intent to terminate on or before December 31, 2007. (See Exhibit C).

18. On or about October 19, 2005, Plaintiff Forest Park purchased the Property from Cash Memorial, and took the Property subject to the Lease.

19. Upon information and belief, in or about January 2007, Apex was renamed HD Supply Plumbing/HVAC Group, Inc.

20. Defendant HD Supply assumed all of Apex's obligations under the Lease and all amendments thereto.

21. In or about December 2007, Defendant HD Supply informed Plaintiff Forest Park that under the terms of the Second Lease Extension, it intended to terminate the Lease as of June 30, 2008.

22. On or about June 28, 2008 and June 30, 2008, Plaintiff sent letters to Defendant stating the amounts due by Defendant for repairs and pro-rated taxes at the end of the Lease ("Close-out Letters").

23. A true and correct copy of the Close-out Letters are attached hereto and incorporated by reference herein as Exhibits D and E.

24. Defendant did not respond to the Close-out Letters, so Plaintiff faxed the Close-out Letters, as well as placed several phone calls to Defendant to inquire about the status of Defendant's tenancy.

25. Plaintiff left several phone messages, however a representative of Defendant never returned the Plaintiff's telephone calls.

4

26. After June 30, 2008, Defendant continued to make on time monthly rent payments due under the Lease.

27. On or about October 8, 2008, Plaintiff mailed Defendant a letter stating that based on Defendant's actions, Plaintiff would assume Defendant wanted to continue the Lease, and instructed Defendant to inform Plaintiff if Defendant's intention was not to continue with the Lease. ("Lease Continuation Letter").

28. A true and correct copy of the Lease Continuation Letter is attached hereto and incorporated by reference herein as Exhibit F.

29. The Lease Continuation Letter also reminded Defendant that as of July 1, 2009, the monthly rent would increase to $11,142.54 per month per the terms of the Lease.

30. After the Lease Continuation Letter, the Defendant continued to pay its monthly rent on time through August 2009.

31. The payments by Defendant for July and August 2009 were in the amount of $11,142.54 per month, which is in accordance with the increased rent required by the Second Lease Extension.

32. From June 30, 2008 to at least September 1, 2009, Defendant continued to keep all utilities for the Property in its name and paid them in full each month.

33. Defendant never turned over possession of the Property to Plaintiff.

5

34. Defendant's actions after June 30, 2008 demonstrated Defendant's intention to continue the term of the Lease through June 30, 2010.

35. Based on Defendant's actions, the term of the Lease will now expire on June 30, 2010.

36. On or about September 10, 2009, Defendant sent a letter demanding a return of the rent and utilities paid by Plaintiff from July 2008 through August 2009. ("Demand Letter")

37. A true and correct copy of the Demand Letter is attached hereto and incorporated by reference herein as Exhibit G.

38. On or about October 6, 2009, Plaintiff responded to the Demand Letter denying that it owed any money to Defendant and demanding strict compliance with the Lease terms, including the payment of rent through the end of the Lease, payment of past due amounts for taxes, and payment for repairs to the Property.

39. A true and correct copy of the October 6, 2009 letter is attached hereto and incorporated by reference herein as Exhibit H.

40. Defendant stopped payment on its rent check for September 2009.

41. To date, Defendant has failed to pay rent for September, October and November 2009.

42. Under Article VI of the Lease, Defendant is required to pay all taxes due on the

Property.

43. Defendant has failed to pay taxes due under the Lease for 2008 and 2009 which total $30,867.81.

44. Under Article VIII of the Lease, Defendant is responsible for all maintenance and repairs to the Property.

45. Defendant has further failed to pay Plaintiff $3,725.00, for maintenance and repairs to the Property performed by Plaintiff.

46. Under Article X of the Lease, the Defendant is required to obtain property insurance on the Property which names Plaintiff as an additional insured, and provide proof of such insurance to Plaintiff.

47. Defendant has failed to provide Plaintiff with proof of property insurance being in effect for the Property after June 30, 2008.

48. Plaintiff has paid $7,792.49 to maintain property insurance on the property since July 1, 2008.

## COUNT I- BREACH OF CONTRACT

## (FAILURE TO PAY RENT)

49. Plaintiff hereby incorporates paragraphs 1 through 48 of its Complaint as if fully set forth herein.

50. Defendant is required to pay rent to Plaintiff through the end of the Lease on

7

June 30, 2010.

51. The monthly rent due under the Lease is $11,142.54 per month.

52. The Defendant's failure to pay rent for September, October, and November 2009 is a breach of the Lease.

53. Defendant is also liable to Plaintiff for rent each month in the amount $11,142.54 through June 30, 2010.

54. As of the filing of this Complaint, Defendant is indebted to the Plaintiff for past due rent in the principal amount of $33,427.62, plus all other monthly rental amounts that accrue through June 30, 2010, plus prejudgment interest at the rate of seven percent (7%) per annum.

## COUNT II- BREACH OF CONTRACT

## (FAILURE TO PAY TAXES)

55. Plaintiff hereby incorporates paragraphs 1 through 54 of its Complaint as if fully set forth herein.

56. Article VI(B) requires Defendant to pay "all personal property taxes, real estate taxes, assessments and other imposition generally or specifically imposed or levied … upon or against the Property…"

57. Defendant has failed to pay the City Forest Park taxes due on the Property for 2008 in the amount of $4,129.96.

58. Defendant has failed to pay the Clayton County taxes due on the Property for 2008 in the amount of $10,755.32.

59. Defendant has failed to pay the City Forest Park taxes due on the Property for 2009 in the amount of $4,480.51.

60. Defendant has failed to pay the Clayton County taxes due on the Property for 2008 in the amount of $11,502.02.

61. To avoid any penalties from Clayton County and the City of Forest Park, Plaintiff paid all of the above described taxes in full to the appropriate governmental entity.

62. Defendant's failure to pay the above described taxes is a breach of the Lease.

63. Therefore, Defendant is indebted to the Plaintiff for past due taxes in the principal amount of $30,867.81, plus prejudgment interest at the rate of seven percent (7%) per annum.

## COUNT III- BREACH OF CONTRACT

## (FAILURE TO PAY FOR REPAIRS)

64. Plaintiff hereby incorporates paragraphs 1 through 63 of its Complaint as if fully set forth herein.

65. Under Article VIII of the Lease, Defendant is responsible for all repairs to the Property.

9

66. Defendant has failed to maintain the Property and make repairs as required by the Lease.

67. Due to Defendant's failure to maintain the Property, Plaintiff has spent money making repairs to the roof, asphalt, fencing, and maintaining the landscaping.

68. To date, Plaintiff has spent $3,725.00 to maintain and repair the Property.

69. In addition, there are more repairs which must be made to the Property, including but not limited to replacement of the asphalt in the parking lot of the Property and repairs to the loading dock doors.

70. Defendant's failure to maintain and repair the Property is a breach of the Lease.

71. As of the filing of this Complaint, Defendant is indebted to the Plaintiff for repairs and maintenance of the Property in the principal amount of $3,725.00, plus all other repair and maintenance costs which become necessary, plus prejudgment interest at the rate of seven percent (7%) per annum.

## COUNT IV- BREACH OF CONTRACT

## (FAILURE TO PROCURE INSURANCE)

72. Plaintiff hereby incorporates paragraphs 1 through 71 of its Complaint as if fully set forth herein.

73. Article X of the Lease requires that the Defendant maintain property insurance with Plaintiff named as an additional insured and loss payee on such policy.

74. Under Article X of the Lease, upon request by Plaintiff, Defendant is required to produce certificates of insurance to prove that the required insurance policies are in place and that Plaintiff is named as an additional insured on such insurance policies ("Certificates of Insurance").

75. Defendant has failed to provide Certificates of Insurance to Plaintiff which show that property insurance was in place on the Property after June 30, 2008.

76. Defendant is required to maintain property insurance on the Property through the end of the Lease on June 30, 2010 ("Termination Date").

77. To make sure the appropriate insurance was in place, Plaintiff purchased property insurance for the Property effective July 1, 2008.

78. Plaintiff has paid for property insurance on the Property through December 31, 2009.

79. Defendant's failure to provide Certificates of Insurance to Plaintiff and maintain property insurance on the Property is a breach of the Lease.

80. As of the filing of this Complaint, Defendant is indebted to Plaintiff for property insurance in the principal amount of $7,792.49, plus any costs for property insurance through the end of the Lease, plus prejudgment interest at the rate of seven percent (7%) per annum.

## COUNT V- ATTORNEY'S FEES

81. Plaintiff hereby incorporates paragraphs 1 through 80 of its Complaint as if fully set forth herein.

82. Plaintiff is entitled to attorney's fees pursuant to O.C.G.A. § 13-6-11, because Defendant has been stubbornly litigious, acted in bad faith and caused Plaintiff unnecessary trouble and expense thereby making and forcing the Plaintiff to incur attorney's fees and file suit. Plaintiff hereby makes a claim for attorney's fees pursuant to O.C.G.A. § 13-6-11 that will be proved at trial of this case.

**WHEREFORE**, Plaintiff prays for the following relief:

    (a)    That process issue against the Defendant according to law;

    (b)    That Plaintiff recover from the Defendant the principal sum of no less than $75,813.88;

    (c)    That Plaintiff recover from the Defendant prejudgment interest at the rate of seven percent (7%) per annum;

    (d)    That Plaintiff recover from Defendant post-judgment interest;

    (e)    That Plaintiff recover from Defendant reasonable attorney's fees;

    (f)    That Plaintiff recover court costs incurred in prosecuting this action; and,

    (g)    That Plaintiff have such other and further relief as this Court deems just and proper.

Respectfully submitted this 25th day of November, 2009.

s/Seth M. Friedman
Ned Blumenthal
Georgia Bar No. 064480
nedblumenthal@wncwlaw.com
Seth M. Friedman
Georgia Bar No. 141501
sethfriedman@wncwlaw.com

**WEISSMAN, NOWACK, CURRY & WILCO, P.C.**
One Alliance Center, 4th Floor
3500 Lenox Road
Atlanta, Georgia 30326
(404) 926-4500
(404) 926-4600 (Fax)

## **VERIFICATION**

Upon personal knowledge, the facts contained in the foregoing Complaint by

Forest Park Holdings, LLC are true and correct to the best of my knowledge,

information, and belief.

_____
Christopher Robin

Title:

Sworn to and subscribed before me
this 24 day of _November_ , 2009.

_____
NOTARY PUBLIC

My commission expires: 5-19-2013



806536_1

14